J-S16043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAFAEL J. SIMMONS-RIVERA | |
| Appellant | No. 831 MDA 2014 |

Appeal from the Judgment of Sentence March 14, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003099-2013

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                          **FILED MAY 06, 2015**

Rafael J. Simmons-Rivera appeals from the judgment of sentence imposed on March 14, 2014, in the Court of Common Pleas of York County following his conviction by a jury of the charge of delivery of a controlled substance (cocaine).[1]  Simmons-Rivera was sentenced to eleven and one-half to twenty-three months' incarceration.  In his sole issue in this timely appeal, Simmons-Rivera claims there was insufficient evidence to support his conviction in that the confidential informant did not testify, no one testified to seeing any exchange of drugs for money, and there was no forensic evidence linking him to the crime.  **See** Appellant's Brief at 6.  After

_____

[1] 35 P.S. § 780-113(a)(30).

a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.[2]

Our standard of review for a challenge to the sufficiency of the evidence is well settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

The trial court did not author an opinion addressing Simmons-Rivera's appeal. Rather, in the order denying Simmons-Rivera's post-sentence motion, the trial court succinctly noted, "We are satisfied that there was plenty of evidence offered at trial to convict [Simmons-Rivera], and we don't

---

[2] On April 11, 2014, the Commonwealth filed an appeal to the Supreme Court challenging the trial court's refusal to apply the school zone enhancement, pursuant to ***Alleyne v. United States***, 133 S.Ct. 1251 (2013). On May 15, 2014, our Supreme Court noted probable jurisdiction, holding that appeal along with approximately 44 related cases.

believe there's any merit to that claim." Order, 6/5/2014. While we agree with the trial court's conclusion, we further provide a more detailed recitation of the relevant evidence.

The Commonwealth's evidence in this matter is both straightforward and circumstantial. A controlled buy was arranged between Simmons-Rivera and the confidential informant (CI). Prior to the transaction, the CI was searched, thereby determining he or she did not possess either drugs or money. The CI was given pre-recorded money to make the drug purchase. Police Officer Michelle Hoover transported the CI to the buy location. Specifically, she testified as follows regarding the January 25, 2013 controlled buy:

> A: It's actually a tricky area. We parked in an alley to the rear of 586 West Philly, but it's a triangular. It's very hard to get back in there and there is a couple of vehicles that were parked to the rear of all of those houses because it's all townhomes and they are connected homes. And the target was backed in his vehicle and we parked beside him.
>
> Q: Okay. Now, you said the target, what kind of vehicle was the target sitting in?
>
> A: He was in a silver Dodge Durango.
>
> Q: And were you able to get the registration for this Durango?
>
> A: No, I wasn't. The way it was faced, it was backed in.
>
> Q: When you pulled in, did you notice anything about this Durango?
>
> A: I noticed that the driver - there was a driver in the vehicle and the vehicle was running.

Q: Did you see anyone else inside the vehicle at that point?

A: No, I did not.

Q: Do you see the person who is sitting in the driver seat here in Court today?

A: Yes, I see Mr. Rivera here today.

Q: Can you identify him by an article of clothing?

A: He is wearing a black jacket and blue shirt.

Q: Your Honor, for the record the Defendant. So you pull into this location, I take it you weren't in uniform at this time?

A: No, I wasn't. I was in plain clothes.

Q: All right. And while the confidential informant was in your car, were they reaching for anything, did you see them put anything in their pockets at this point?

A: No.

Q: What did you observe next?

A: The confidential informant was the passenger in my vehicle and the confidential informant got out of my vehicle and walked over to the Dodge Durango and sat in the passenger seat.

Q: The front passenger seat?

A: Correct.

Q: And the Durango, did it have tinted windows?

A: The side windows were a little bit tinted, but the front windshield was not.

Q: So, you saw the CI get into the front passenger seat. Did you see anyone else in the vehicle besides the CI and the Defendant?

A: No, only those two.

Q: And what did you observe next?

A: I viewed them. They looked like they were having a conversation and short transaction leaning towards each other. And then the confidential informant got out of the vehicle. They were only in the vehicle probably three or four minutes until the confidential informant got back in my vehicle.

Q: And now during this time were you distracted at all, reading anything, were you doing anything else?

A: No, I was not.

Q: Okay. Did you see the confidential informant meet with anyone else?

A: No.

Q: What did the confidential informant do after this transaction that you observed?

A: Like I said, they were briefly in the vehicle, maybe three or four minutes. And then after they met, the confidential informant walked back into my vehicle directly from the target vehicle to my vehicle.

Q: And are you watching the Durango the entire time?

A: Yes, I am.

Q: Did you lose sight of the confidential informant at all?

A: No.

Q: How far away were you from the Defendant, Mr. Simmons-Rivera?

A: Probably from me to you.

Q: Okay. So, the confidential informant returns to you, where do you go next?

A: We went to our office. We met at another location.

Q: Did the confidential informant provide you with any contraband?

A: Yes. The confidential informant handed me a cigarette pack and I opened it up and I saw there were two little small bags of marijuana inside and I closed it up and I put it in the passenger door, the little storage area in my door, until we got back to our office.

Q: I am showing you Commonwealth's Exhibit No. 1. It's already been opened. Can you look inside and tell me if you recognize that?

A: Yes. I recognize that cigarette pack.

Q: And is that the same cigarette pack that the confidential informant handed you?

A: Yes.

Q: And you said it had two small bags of marijuana. Did it also have some suspected cocaine in there?

A: Yes, it did underneath. I just didn't take it out when I first got it.

N.T. Trial, 12/12/2013, at 99-103 (request for permission to approach omitted).

Because this transaction was part of a larger investigation, Simmons-Rivera was not immediately arrested.[3] The substances were submitted to a certified laboratory and tested positive as marijuana and cocaine. It was also later determined that Simmons-Rivera owned the Durango.

---

[3] Simmons-Rivera was arrested on February 6, 2013, approximately two weeks after the controlled buy.

Simmons-Rivera argues this evidence was insufficient because, in part, the CI did not testify. Such testimony was not required given the extent of Officer Hoover's testimony and her observation of the meeting between the CI and Simmons-Rivera, even though she could not see the exchange of money for drugs between the CI and Simmons-Rivera. The evidence clearly demonstrated that the CI did not possess any contraband prior to getting into the silver Durango with Simmons-Rivera. After a brief encounter between Simmons-Rivera and the CI, the CI returned to the police vehicle without having met any other person. Upon re-entering the police vehicle, the CI turned over a cigarette pack that contained marijuana and cocaine. Circumstantially, the only place the CI could have obtained that cigarette pack was from Simmons-Rivera. Similarly, the lack of fingerprint evidence connecting Simmons-Rivera to the drugs does not render the conviction infirm. Accordingly, there was sufficient evidence to support Simmons-Rivera's conviction of delivery of cocaine, and he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2015